MICHAEL WAYNE CLINEBELL

V.

COMMONWEALTH OF VIRGINIA

Record No. 870168

April 22, 1988

Present: All the Justices

*Jonathan S. Kurtin (Harvey S. Lutins*, on briefs), for appellant.
*Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General; Birdie H. Jamison, Assistant Attorney General*, on brief), for appellee.

STEPHENSON, J., delivered the opinion of the court.

In this appeal, we decide whether (1) the indictments sufficiently informed the defendant of the dates of the crimes charged

against him, and (2) the trial court erred in excluding certain evidence proffered by the defendant to impeach the complaining witness in five criminal sexual assault cases.

Tried by a jury, Michael Wayne Clinebell was convicted of two counts of rape of his daughter, a child under the age of 13, in violation of Code § 18.2-61, of two counts of sodomy of the child, in violation of Code § 18.2-67.1, and of one count of sexual penetration of the child with an inanimate object, in violation of Code § 18.2-67.2. In accordance with the jury's verdicts, the trial court (the Circuit Court of the City of Roanoke) sentenced Clinebell to 10 years' imprisonment for each of the rape convictions, to 15 years in prison for each of the sodomy convictions, and to 10 years' imprisonment for the object penetration conviction. The trial court's judgments in each case were affirmed by the Court of Appeals of Virginia. *Clinebell v. Commonwealth*, 3 Va. App. 362, 349 S.E.2d 676 (1986).

Clinebell first contends that the indictments were fatally defective because they failed to specify the exact dates of the alleged offenses. We conclude that the indictments are legally sufficient, and on this issue, we affirm the holding and rationale of the Court of Appeals. *See Clinebell*, 3 Va. App. at 364-67, 349 S.E.2d at 677-79.

We next consider the evidentiary issues. Prior to the trial of this case, the Commonwealth, relying upon Code § 18.2-67.7 (sometimes referred to as the "rape shield" law),[1] filed a motion *in limine* to have the trial court prohibit the "offer or reference to any past sexual contact of the [daughter] with any person other than [Clinebell]." Specifically, the Commonwealth sought to prohibit any reference at trial to the following statements allegedly made by the daughter: (1) that in 1983, she told a classmate that she was pregnant; (2) that in 1984, she told the classmate that

---

[1] Code § 18.2-67.7 provides in pertinent part:

    A. In prosecutions [of criminal sexual assault cases], general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct shall not be admitted. Unless the complaining witness voluntarily agrees otherwise, evidence of specific instances of his or her prior sexual conduct shall be admitted only if it is relevant . . . :

    . . . .

    B. Nothing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused.

both her father and her uncle had raped her; (3) that in 1984, she told a cousin that a boy named Wesley, who lived in Stewartsville, had gotten her pregnant; and (4) that she had claimed that her paternal grandfather had sexually abused her.[2]

Clinebell resisted the granting of the motion *in limine*. He argued that Code § 18.2-67.7 was not applicable because the evidence was not being offered to prove that the daughter engaged in prior sexual conduct, but only to prove that she falsely claimed to have engaged in such conduct. The purpose of introducing the statements was to attack the daughter's credibility. According to Clinebell, the statements would be evidence from which the jury could infer that the daughter was fantasizing about sexual matters, including the claims against her father. If the jury believed this to be the case, the daughter would be impeached.

The trial court rejected Clinebell's argument and granted the motion *in limine*. The court opined that the statements were excluded by Code § 18.2-67.7. We do not agree.

■ Code § 18.2-67.7 was enacted to exclude evidence in criminal assault cases of the "general reputation . . . of the complaining witness's unchaste character or prior sexual conduct." *See Winfield* v. *Commonwealth*, 225 Va. 211, 217-19, 301 S.E.2d 15, 19-20 (1983) (discussing ills General Assembly sought to cure by enacting Code § 18.2-67.7). "Prior sexual conduct" is defined as "any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged under this article." Code § 18.2-67.10(5).

■ In the present case, Clinebell does not seek to prove that his daughter has engaged in "prior sexual conduct" or that she has an unchaste character. He seeks to prove for impeachment purposes that his daughter makes false statements concerning sexual behavior. We conclude that such statements are not "conduct" within the meaning of Code § 18.2-67.7, and therefore, the section is inapplicable. *Accord Snider* v. *State*, 274 Ind. 401, 405, 412 N.E.2d 230, 233 (1980) (complainant's bet that she could "take her father to bed" arguably not excluded under rape shield statute because not "past sexual conduct"); *Cox* v. *State*, 51 Md. App. 271, 281, 443 A.2d 607, 613 (1982) (false, recanted testimony not re-

---

[2] In March 1985, the grandfather was tried by a Roanoke County jury on one count of sexually abusing the same child and one count of engaging in fellatio with the same child. He was acquitted of both charges.

lated to chastity or sexual conduct), *aff'd*, 298 Md. 173, 468 A.2d 319 (1983); *State* v. *Zaehringer*, 280 N.W.2d 416, 419-20 (Iowa 1979) (posing nude not sexual conduct excludable under rape shield law); *Commonwealth* v. *Bohannon*, 376 Mass. 90, 94-95, 378 N.E.2d 987, 991-92 (1978) (proposed cross-examination questions concerning whether complainant previously had made false allegations of rape did not relate to her prior sexual activity or reputation for chastity; therefore, rape shield statute not applicable); *People* v. *Hackett*, 421 Mich. 338, 348, 365 N.W.2d 120, 128 (1985) (complainant's statement of sexual dissatisfaction at home not within rape shield law); *People* v. *Arenda*, 416 Mich. 1, 13, 330 N.W.2d 814, 818 (1982) (past sexual conduct does not include, *inter alia*, conversing with others); *State* v. *Durham*, 74 N.C. App. 159, 167, 327 S.E.2d 920, 926 (1985) (child's accusation of abuse by father, told to mother, evidence of conversation or language and, therefore, not excluded by rape shield statute); *State* v. *Baron*, 58 N.C. App. 150, 153-54, 292 S.E.2d 741, 743-44 (1982) (complainant's prior statements accusing others of improper sexual advances not sexual activity); *State* v. *Smith*, 45 N.C. App. 501, 502-03, 263 S.E.2d 371, 372 (discussions about complainant's sexual problems not sexual behavior), *rev. denied*, 301 N.C. 104, 273 S.E.2d 460 (1980); *State* v. *LeClair*, 83 Or. App. 121, 126-27, 730 P.2d 609, 613 (1986) (evidence of child's previous false accusations of sexual abuse not evidence of past sexual behavior under rape shield law), *rev. denied*, 303 Or. 74, 734 P.2d 354 (1987); *State* v. *Vonesh*, 135 Wis. 2d 477, 490, 401 N.W.2d 170, 176-77 (Wis. App. 1986) (written expressions of sexual desires or activities not sexual conduct or behavior).

The Court of Appeals did not address the applicability of Code § 18.2-67.7. The court held, however, that the trial court did not err in excluding this evidence, opining that "[t]he proper way to have impeached the [daughter] . . . would have been to show that she had a bad reputation for truth and veracity." *Clinebell*, 3 Va. App. at 370, 349 S.E.2d at 681.

We agree with the Court of Appeals that one method of impeaching a witness is by attacking that witness' character. Ordinarily, character is attacked by presenting testimony that the witness' general reputation for truth and veracity is bad. *Bradley* v. *Commonwealth*, 196 Va. 1126, 1133-34, 86 S.E.2d 828, 833 (1955). Generally, as the Court of Appeals recognized, a witness'

character may not be impeached by showing specific acts of untruthfulness or bad conduct.

■ In sex offense cases, however, the weight of authority recognizes more liberal rules concerning impeachment of complaining witnesses. Accordingly, a majority of jurisdictions that have considered the issue hold that evidence of prior false accusations is admissible to impeach the complaining witness' credibility or as substantive evidence tending to prove that the instant offense did not occur. *See Covington v. Alaska*, 703 P.2d 436, 442 (1985) (credibility); *State v. Hutchinson*, 141 Ariz. 583, 587, 688 P.2d 209, 211-13 (App. 1984) (substantive evidence); *West v. Arkansas*, 290 Ark. 329, 334, 719 S.W.2d 684, 687 (1986) (substantive evidence); *People v. Adams*, 243 Cal. Rptr. 580, 583-84, 198 Cal. App. 3d 10, 18-19 (1988); *People v. Hurlburt*, 166 Cal. App. 2d 334, 342-43, 333 P.2d 82, 87-88 (1958) (substantive evidence); *People v. Simbolo*, 188 Colo. 49, 52, 532 P.2d 962, 963-64 (1975) (credibility); *State v. Schwartzmiller*, 107 Idaho 89, 92, 685 P.2d 830, 833 (1984) (credibility); *People v. Gorney*, 107 Ill. 2d 53, 58-61, 481 N.E.2d 673, 675-76 (1985) (credibility); *Little v. State*, 413 N.E.2d 639, 643 (Ind. App. 1980) (credibility); *State v. Cox*, 298 Md. 173, 183, 468 A.2d 319, 324 (1983), *aff'g* 51 Md. App. 271, 443 A.2d 607 (1982) (credibility); *Bohannon*, 376 Mass. at 94, 378 N.E.2d at 991 (credibility); *People v. Evans*, 72 Mich. 367, 380, 40 N.W. 473, 478-79 (1888) (substantive evidence); *People v. Garvie*, 148 Mich. App. 444, 448, 384 N.W.2d 796, 798 (1986) (credibility); *State v. Caswell*, 320 N.W.2d 417, 419 (Minn. 1982) (credibility); *State v. Anderson*, 686 P.2d 193, 198-201 (Mont. 1984) (probative of state of mind); *State v. Johnson*, 102 N.M. 110, 117-18, 692 P.2d 35, 43 (App. 1984) (credibility); *Baron*, 58 N.C. App. at 153-54, 292 S.E.2d at 743-44; *State v. Kringstad*, 353 N.W.2d 302, 311 (N.D. 1984) (credibility); *Woods v. State*, 657 P.2d 180, 181-82 (Okla. 1983) (substantive evidence); *State v. Nab*, 245 Or. 454, 458-60, 421 P.2d 388, 390-91 (1966); *State v. McCarthy*, 446 A.2d 1034, 1034-35 (R.I. 1982) (credibility); *Thomas v. State*, 669 S.W.2d 420, 423 (Tex. App. 1 Dist. 1984) (credibility); *State v. Demos*, 94 Wash. 2d 733, 736, 619 P.2d 968, 970 (1980) (credibility). *See generally* 3A J. Wigmore, *Evidence in Trials at Common Law* §§ 924a, 934a, 963, 979 (Chadbourn rev. 1970); Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 858-63 (1986).

■ At least in the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-examination. *E.g.*, *LeClair*, 83 Or. App. at 130, 730 P.2d at 615. Cross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process. *Davis* v. *Alaska*, 415 U.S. 308, 315-17 (1974); *Barrett* v. *Commonwealth*, 231 Va. 102, 108, 341 S.E.2d 190, 194 (1986); *Shanklin* v. *Commonwealth*, 222 Va. 862, 864, 284 S.E.2d 611, 612 (1981); *Whittaker* v. *Commonwealth*, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). It is "[o]ne of the most zealously guarded rights in the administration of justice." *Moore* v. *Commonwealth*, 202 Va. 667, 669, 119 S.E.2d 324, 327 (1961). Consequently, in a sex crime case, the complaining witness may be cross-examined about prior false accusations, and if the witness denies making the statement, the defense may submit proof of such charges. *State* v. *Mikula*, 84 Mich. App. 108, 115-16, 269 N.W.2d 195, 198-99 (1978).

■ A complaining witness' prior accusations are admissible, however, only if a court makes a threshold determination that a reasonable probability of falsity exists. *See Woods*, 657 P.2d at 182 ("reasonable basis" of falsity); *LeClair*, 83 Or. App. at 130, 730 P.2d at 615-16 ("some evidence" of falsity); *Bohannon*, 376 Mass. at 95, 378 N.E.2d at 991 ("factual basis" of falsity).

■ In the instant case, we are of opinion that Clinebell had a right to confront his daughter with the extrajudicial statements she allegedly made to disinterested persons. The statements included the daughter's claims on two different occasions that she was pregnant. These claims were patently untrue and were made in 1983 and 1984 when the daughter was 10 and 11 years of age. The daughter also claimed to have been sexually assaulted by her grandfather and her uncle. In light of her obviously false claims of pregnancy, a reasonable probability exists that her claims of sexual misconduct against the grandfather and the uncle also were false.

■ Had the jury been informed of her prior statements, we believe it properly could have inferred that the father's alleged sexual acts with his daughter were also fabrications. We hold, therefore, that the trial court erred in excluding this evidence.

Clinebell also proffered the testimony of Dr. Herbert L. Keaton, an optometrist with 30 years experience. Dr. Keaton first examined the daughter's eyes on March 30, 1982. At that time, the

daughter's vision was 20/200, indicating that she was "legally blind." The doctor, however, did not detect any physical or pathological problem with her eyes. He prescribed "placebo" glasses, and the daughter's vision immediately improved from 20/200 to 20/60. Within one to two weeks, her vision was 20/20—"essentially perfect."

Dr. Keaton diagnosed the daughter as having "hysterical amblyopia," which is also known as hysterical blindness. Based upon his training and experience, the doctor opined that most people have this condition because they seek attention. As a result, persons afflicted with hysterical amblyopia truly believe that they cannot see.

The trial court ruled this testimony inadmissible because "it does not show any plain motive or scheme and if she had a problem in 1982, the doctor is an optometrist and not a psychiatrist." The Court of Appeals affirmed the trial court's ruling, finding that the trial court "did not abuse [its] discretion" in excluding the doctor's testimony. *Clinebell*, 3 Va. App. at 369, 349 S.E.2d at 680. The Court of Appeals also concluded that the evidence was too remote. *Id.* The Court of Appeals said, *inter alia*:

> The trial judge noted that Dr. Keaton was an optometrist and not a psychiatrist. Presumably, his reasoning was that the doctor's expert opinion concerning the child's tendency to fabricate her testimony was not within his expertise. Although the doctor testified that he had been an optometrist for thirty-nine [sic] years and had experience with hysterical amblyopia, there was nothing in his list of qualifications to show that he had any particular psychiatric training.

*Id.* at 368-69, 349 S.E.2d at 680.

Our reading of Dr. Keaton's proffered testimony does not suggest that he purported to delve into the field of psychiatry. He was called to testify concerning facts disclosed by his examination of the daughter and by the treatment he had prescribed. It was a fact that when he first examined the daughter, her vision was 20/200. By fitting her with "placebo" glasses, her vision immediately improved to 20/60. In a week or so, her vision was 20/20. The doctor diagnosed this phenomenon as hysterical amblyopia. Based upon his training and experience, the doctor stated that the condition generally resulted from a need for attention. His testimony

was limited to the facts of his diagnosis and treatment of the daughter and the general cause of the phenomenon. He gave no opinion about the child's "tendency to fabricate." *Id.* at 368, 349 S.E.2d at 680. We believe his testimony was limited to matters within the knowledge and expertise of an optometrist and did not invade the field of psychiatry. Where, as here, "it appears clearly that the witness was qualified," the trial court abused its discretion in refusing to admit his testimony. *Landis* v. *Commonwealth*, 218 Va. 797, 800, 241 S.E.2d 749, 751 (1978).

Nor do we believe the doctor's testimony was too remote. He examined and treated the daughter in March and April 1982. In 1983, she claimed that she was pregnant. In 1984, she told a classmate that her father and uncle had raped her. That same year, she told her cousin that a boy named Wesley, who lived in Stewartsville, had gotten her pregnant. She made the complaint against her father in August 1984, and he was tried on April 30 and May 1, 1985.

In light of the daughter's prior statements, we conclude that the doctor's testimony was relevant and probative to impeach her testimony. From the excluded evidence, the jury reasonably could have inferred that from 1982 to the time of trial, the daughter displayed attention-seeking behavior that caused her to fabricate matters. Thus, the trial court erred in excluding the doctor's testimony.

In sum, we will vacate the judgments of the trial court as to all convictions, and we will reverse the order of the Court of Appeals as it relates to the evidentiary issues. We will affirm the order of the Court of Appeals, however, as it relates to the validity of the indictments. We will remand the cases to the Court of Appeals with direction to remand them to the trial court for further proceedings, if the Commonwealth be so advised.

*Affirmed in part,*
*reversed in part,*
*and remanded.*