COURT OF APPEALS OF VIRGINIA

Present:   Judges Athey, Friedman and Lorish
Argued at Salem, Virginia


AMERICUS DASHAWN MURPHY

                                            MEMORANDUM OPINION[*] BY
v.        Record No. 1678-24-3               JUDGE LISA M. LORISH
                                               OCTOBER 28, 2025
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
                              Stacey W. Moreau, Judge

            Michael A. Nicholas (Daniel, Medley & Kirby, P.C., on briefs), for
            appellant.

            Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


      After a jury trial, the Circuit Court of Pittsylvania County convicted Americus Dashawn

Murphy of two counts of aggravated sexual battery and sentenced him to 40 years of imprisonment.

On appeal, Murphy contends the court erred by preventing him from cross-examining the victim

and her mother ("mother") about a past allegation of sexual abuse made by mother. We find no trial

court error and affirm the judgment.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

Complaining witness P.S.[2] was 16 years old at the time of Murphy's July 2024 trial, and Murphy was 35. For many years, Murphy was a close and trusted friend of P.S.'s family, and he often babysat P.S. and her three younger siblings.

Beginning when P.S. was 11 or 12 years old, Murphy frequently touched P.S.'s buttocks when he hugged her. Murphy called P.S. his "special girl," gave her gifts, and paid more attention to her than her siblings. Eventually, Murphy began engaging P.S. in sexual acts, kissing her on the lips, and touching his penis to her mouth. Murphy groped P.S.'s vagina and breasts both over and under her clothes. He touched his penis to her vagina and her anus. The incidents occurred in P.S.'s bedroom and the home's bathroom.

P.S.'s younger sisters and brother witnessed several of these sexual encounters but initially did not report them due to Murphy's violent threats. P.S. also threatened and hit her siblings so they would not tell their parents about what they had seen. At the time, P.S. believed that she loved Murphy and that they had a "special thing," so she told no one about the sexual activity.

After an incident where Murphy injured P.S.'s brother following the brother's attempt to prevent Murphy from molesting P.S., P.S.'s siblings told mother about the sexual acts they had witnessed. Mother gathered more information from the younger children and confronted P.S. about her relationship with Murphy. At first, P.S. denied having any sexual contact with Murphy. P.S. was angry with her siblings for telling her parents.

---

[1] On appeal, this Court views the evidence and all reasonable inferences flowing from it in the light most favorable to the Commonwealth, the party that prevailed in the trial court. *Goodwin v. Commonwealth*, 71 Va. App. 125, 129 n.1 (2019).

[2] To protect the victim's privacy, we refer to her by her initials.

Mother then took P.S. to speak with Pittsylvania County Deputy Ethan Francis. P.S. was unhappy with mother's decision. She was reluctant to talk to the police and initially denied a sexual relationship with Murphy. It took several years—including counseling and in-patient psychiatric care—for P.S. to understand that the relationship was "wrong" because Murphy had "taken advantage of" her. Murphy was then indicted in December 2023.

Before trial, Murphy sought a ruling permitting cross-examination of P.S. and mother about a prior allegation that mother made against Murphy. He based his motion on a "Case Supplemental Report" by Pittsylvania County Investigator Boyd Arnold, dated November 30, 2020. Murphy desired to use the report to impeach the witness's credibility.

In the report, Investigator Arnold described a phone call he had with mother in which mother told Investigator Arnold that Murphy "had babysat [P.S.] when she was 3 or 4 [years] old and touched her back then." Mother disclosed that she had reported the incident to the Danville police, who arranged for a forensic nurse examiner (FNE) in Lynchburg to examine P.S. Investigator Arnold called the Lynchburg FNE and confirmed that they had examined P.S. on June 2, 2011, but the FNE determined that "[t]he offender was a 9 [year] old child Tristan, not Americus Murphy."

The trial court denied Murphy's motion, finding that the report did not demonstrate a reasonable probability of the statement's falsity, the complaining witness did not make the statement, and the report's prejudicial effects outweighed any probative value. Murphy challenges this ruling on appeal.

ANALYSIS

Determining the "'admissibility of evidence is within the discretion of the trial court,' and an appellate court will not reject such decision absent an 'abuse of discretion.'" *Williams v. Commonwealth*, 71 Va. App. 462, 487 (2020) (quoting *Tirado v. Commonwealth*, 296 Va. 15, 26

- 3 -

(2018)).  "[T]he abuse of discretion standard requires a reviewing court to show enough deference to a primary decisionmaker's judgment that the [reviewing] court does not reverse merely because it would have come to a different result in the first instance."  *Commonwealth v. Thomas*, 73 Va. App. 121, 127 (2021) (alterations in original) (quoting *Lawlor v. Commonwealth*, 285 Va. 187, 212 (2013)).  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred."  *Hicks v. Commonwealth*, 71 Va. App. 255, 270 (2019) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)).

"[A] witness' credibility [generally] may not be impeached by showing specific acts of untruthfulness or bad conduct."  *Richardson v. Commonwealth*, 42 Va. App. 236, 240 (2004) (quoting *Clinebell v. Commonwealth*, 235 Va. 319, 323-24 (1989)).  Still, "[a]t least in the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-examination" guaranteed by the Confrontation Clause of the Sixth Amendment.  *Clinebell*, 235 Va. at 325.  Thus, in *Clinebell*, the Supreme Court of Virginia held that "in a sex crime case, the complaining witness may be cross-examined about prior false accusations, and if the witness denies making the statement, the defense may submit proof of such charges."  *Id.*; *see also* Va. R. Evid. 2:608(e) ("Except as otherwise provided by other evidentiary principles, statutes or Rules of Court, a complaining witness in a sexual assault case may be cross-examined about prior false accusations of sexual misconduct.").

A witness's prior accusation is only admissible, however, "if a court makes a threshold determination that a reasonable probability of falsity exists."  *Clinebell*, 235 Va. at 325.  "Unless the prior claims of sexual abuse are 'patently untrue' on their face, the defendant must proffer evidence sufficient to persuade a trial court of a 'reasonable probability that the victim's allegations were false.'"  *Roadcap v. Commonwealth*, 50 Va. App. 732, 740 (2007) (first quoting

- 4 -

*Clinebell*, 235 Va. at 325; and then quoting *Richardson*, 42 Va. App. at 242). "[P]rior statements that may or may not be truthful neither bolster nor impeach the witness and, thus, should be excluded as irrelevant." *Id.* "The 'focus is the falsity of the accusations' to ensure that the trial does not 'stray from the central issue of the guilt or innocence of the defendant into a full-scale investigation of charges made by the [victim] against other persons. That would be intolerable.'" *Id.* at 739 (alteration in original) (quoting *Little v. State*, 413 N.E.2d 639, 643 (Ind. Ct. App. 1980)).

On appeal, Murphy argues that the trial court abused its discretion in preventing him from cross-examining P.S. and mother about mother's prior allegation concerning a "touching" that happened when P.S. was three or four years old. He maintains that the proffered report "gives rise to the reasonable probability of falsehood required" for the admission of the evidence.

To start, the appropriate legal analysis for Murphy's request to cross-examine P.S., the complaining witness in this case, differs from the analysis for his request to cross-examine mother, who testified on behalf of the prosecution. Murphy argues that both requests should have been granted under Virginia Rule of Evidence 2:608(e) which states, "Except as otherwise provided by other evidentiary principles, statutes or Rules of Court, a complaining witness in a sexual assault case may be cross-examined about prior false accusations of sexual misconduct." But this rule only applies to the complaining witness—here, P.S.

The trial court concluded there was insufficient evidence that P.S. made a false accusation, and we agree. Not only is there no evidence in the record that P.S. made *any* prior accusation (the report itself stated that the accusation was mother's), but there is no evidence that this assumed specter of an accusation from P.S. was false. We therefore find that the trial court did not abuse its discretion by denying the request to cross-examine P.S.

Turning to Murphy's request to cross-examine mother, the trial court concluded that (1) there was insufficient evidence that any false allegation had been made; (2) the exception in Rule 2:608(e) only applied to the victim in a sexual assault case; and (3) cross-examination on this topic would be more prejudicial than probative.[3] We agree that Rule 2:608(e) only applies to testimony given by the complaining witness in a sexual assault case, but that does not end the inquiry. Even if we assume, without deciding, that there would be some other permissible basis for Murphy to have questioned mother about a prior false report of sexual abuse, the trial court concluded that there was insufficient evidence that any false report was made. The police report in question showed that mother told the police that Murphy had "touched" P.S. when the child was three or four years old. The report then confirmed that Investigator Boyd found no evidence supporting mother's claim that Murphy abused P.S. when she was three or four. But it did not conclude that Murphy *never* touched P.S. when she was three or four, or that mother's report was otherwise false.[4] Thus, Murphy failed to proffer enough evidence to show that the cross-examination would be relevant.

And even if the evidence would have been relevant, the trial court concluded that introducing this evidence would have been more prejudicial than probative. *See* Va. R. Evid. 2:403(a) (permitting trial courts to exclude relevant evidence where "the probative

---

[3] The Commonwealth argues that Murphy failed to assign error to each of these three independent holdings of the trial court. We assume without deciding that Murphy sufficiently assigned error to the trial court's overall conclusion that the cross-examination was impermissible and conclude that addressing the question on the merits is the "best and narrowest ground" for resolution. *Durham v. Commonwealth*, 303 Va. 310, 322 n.2 (2024).

[4] The police report noted that Investigator Boyd spoke to a forensic nurse examiner in Lynchburg who confirmed the child had been examined on June 2, 2011, and that the "offender was a 9 [year] old child Tristan." But as the trial court noted, there could have been "multiple" incidents of abuse.

- 6 -

value of the evidence is substantially outweighed by (i) the danger of unfair prejudice").[5] "The responsibility for balancing the competing considerations of probative value and prejudice rests in the sound discretion of the trial court . . . [which] will not be disturbed on appeal in the absence of a clear abuse." *Spencer v. Commonwealth*, 240 Va. 78, 90 (1990). We find no abuse of discretion in the court's balancing here.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*

---

[5] Murphy has not challenged the trial court's application of the Rule 2:403 balancing test.