Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/16/2022 08:04 AM CST

State of Nebraska, appellee, v.
Lencho Ahmed Ali, appellant.

\_\_\_ N.W.2d \_\_\_

Filed December 2, 2022.    No. S-21-960.

1. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

2. **Judges: Words and Phrases.** A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.

3. **Rules of Evidence: Sexual Assault: Proof.** Under Neb. Rev. Stat. § 27-412 (Cum. Supp. 2020), evidence offered to prove a victim's past sexual behavior or sexual predisposition is inadmissible unless an exception applies.

4. **Rules of Evidence: Sexual Assault.** A false accusation of rape where no sexual activity is involved falls outside of Nebraska's rape shield statute.

5. **Constitutional Law: Criminal Law: Witnesses.** The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him or her.

6. **Constitutional Law: Witnesses.** A primary interest secured by the Confrontation Clause is the right of cross-examination.

7. **Witnesses: Testimony.** Cross-examination is the principal means by which the believability of a witness and the truth of his or her testimony are tested.

8. **Witnesses: Impeachment.** Subject to the trial court's broad discretion, a cross-examiner has traditionally been allowed to impeach or discredit the witness.

9. **Trial: Evidence.** Well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.

10. **Constitutional Law: Trial: Evidence.** In weighing whether evidence must be admitted under the Confrontation Clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail.

11. **Sexual Assault: Witnesses: Evidence.** In the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-examination.

12. **Sexual Assault: Witnesses: Evidence: Proof.** Before defense counsel launches into cross-examination about false allegations of sexual assault, a defendant must establish, outside of the presence of the jury, by a greater weight of the evidence, that (1) the accusation or accusations were in fact made, (2) the accusation or accusations were in fact false, and (3) the evidence is more probative than prejudicial.

13. **Sentences: Final Orders: Appeal and Error.** A sentence is not a final judgment until the entry of a final mandate of an appellate court if an appeal is taken.

14. **Judgments: Statutes: Due Process: Time.** A judicial decision interpreting a statute may be applied retroactively unless the decision denies due process by being both unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.

Appeal from the District Court for Hall County: Ryan C. Carson, Judge. Affirmed.

Mark Porto, of Wolf, McDermott, Depue, Sabott, Butz & Porto, L.L.C., for appellant.

Douglas J. Peterson, Attorney General, and Kimberly A. Klein for appellee.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Cassel, J.

# I. INTRODUCTION

This is Lencho Ahmed Ali's direct appeal from his conviction, following a jury trial, for sexual assault in the first degree.

Ali challenges the district court's ruling prohibiting him from asking the complaining witness about an allegation that she made against a doctor regarding inappropriate touching during a prenatal examination. Because the evidence's minimal probative value is outweighed by the dangers of unfair prejudice and confusion of issues, we find no abuse of discretion. Accordingly, we affirm the district court's judgment.

## II. BACKGROUND

### 1. Factual Background

One afternoon in May 2012, Ali approached J.K. and asked if she wanted to sit and talk for a while. Although Ali was a stranger, J.K. explained that she agreed to do so, "just being polite and stuff." They went to a motel to "get out of the heat."

J.K. described the events at the motel. After entering the motel room, J.K. sat on a chair and Ali sat on the bed. Ali gently pulled J.K. from the chair, and she sat with him on the bed. Ali then laid J.K. down and began kissing her. J.K. testified that she "popped back up and told him it was not a good idea, [she] was going to leave." But she did not attempt to leave the room. Ali turned on the television, then laid J.K. back down and resumed kissing her. J.K. testified that she "was kind of pushing on his shoulder a little bit" because she did not want to kiss. Ali pushed up her shirt and bra and began sucking on her breasts. J.K. testified that she kept repeating "no." Ali removed J.K.'s pants, shorts, and underwear. As he was doing so, J.K. tried to kick him away from her. He penetrated her anus. J.K. screamed, and Ali stopped. She then got off the bed, dressed, and left.

Ali's account differed in some respects. He told law enforcement officers that J.K. removed her clothing and pulled down his pants. He explained that as they were lying naked on the bed, J.K. indicated a willingness to engage in sexual intercourse. But right after he penetrated J.K., she jumped off the bed and said that she wanted to leave.

J.K. testified that during the encounter, she told Ali "no" 10 or more times. She explained, "I remember saying, No, I didn't want it, but I didn't really say that exactly I didn't want sex or anything, I just told him no." Her scream was the clearest indication to Ali that she did not want to go any further, and Ali stopped immediately when she screamed.

J.K. walked to an establishment where her former manager worked. J.K. informed her former manager that she was raped. Her former manager then called the police. After speaking with an officer, J.K. went with the officer to an emergency room. J.K.'s mother testified that when she saw J.K. in the emergency room, J.K. was "shaking" and "crying pretty hard."

## 2. Procedural Background

The State filed an amended information charging Ali with sexual assault in the first degree. The information alleged that Ali subjected J.K. to sexual penetration without consent.

Prior to trial, the State filed a motion in limine for an order prohibiting the mention of evidence of J.K.'s prior reports of sexual assault. The State asserted that the evidence was not relevant under Neb. Rev. Stat. §§ 27-402 and 27-403 (Reissue 2016) and that it was inadmissible under Neb. Rev. Stat. § 27-412 (Cum. Supp. 2020). (Although the Legislature amended § 27-412 in 2019 via L.B. 478, that amendment is irrelevant in this criminal proceeding and we therefore refer only to the current version of the statute.)

During a hearing on the motion, the court received two exhibits.

One was a DVD recording of an interview by law enforcement conducted of J.K. with regard to a 2010 report of inappropriate touching by a doctor. The touching occurred during the course of a prenatal examination when J.K. was 11 or 12 weeks along in her first pregnancy. She had never had a pap smear before. J.K. stated that the doctor put his hand on her right leg and rubbed up and down and that she was "about

to slap him." J.K. said that she had never had a doctor do that before.

The other exhibit was a six-page excerpt of a deposition of J.K. that was taken by Ali's defense counsel, who inquired about the 2010 report. In the deposition, J.K. testified that a roommate who stayed in the room with J.K. during the examination said that the doctor "was, I guess, checking my leg to make sure it was, like, strengthen and everything was fine with my leg . . . [b]ut she said it was sexual harassment and stuff." J.K. further testified in the deposition that the roommate said that the doctor "was touching me inappropriate and stuff. And I was, like, confused. I didn't know what she was exactly meaning by it or anything like that. I didn't know what was happening." J.K.'s roommate then told their other roommate that the doctor touched J.K. inappropriately, and that roommate told J.K. to call the police. When asked if J.K. told the police that the doctor had touched her in an inappropriate way, J.K. answered, "I just told them that he touched just right here, just on my leg . . . ." When Ali's counsel asked if J.K. felt that the doctor touched her in any inappropriate way, J.K. answered: "Not really. I was wondering what he was doing, but I didn't feel like he was — I just figured it was normal procedure for a pregnancy."

The court ordered that Ali not mention the allegation of sexual assault during the course of a medical examination. It further ordered that Ali not offer evidence or ask questions suggesting inconsistent reports without first alerting the court to his intent to do so.

In explaining its preliminary ruling, the court stated that J.K.'s deposition "[a]rguably, . . . in part, recanted the alleged report or, at least, her perception of the event." The court acknowledged J.K.'s testimony that "her 2010 report was a result of pressure [she] was receiving from persons with whom she was then living." The court opined that § 27-412 did not apply. It reasoned that the evidence in question was "not evidence of the past sexual behavior of the victim," but, rather,

was "evidence associated within consistency in reporting, or perhaps evidence that the victim is subject to suggestion by others with regard to whether a sexual assault has or has not occurred."

### 3. Jury Trial

J.K., age 24 at the time of the May 2013 trial, had graduated from high school. She attended special education classes during her schooling. J.K. testified on behalf of the State about the May 2012 encounter. Defense counsel cross-examined her about the encounter. Counsel did not ask about any prior allegations of sexual assault.

After the State rested its case, defense counsel advised the court of his intent to call J.K. as a witness. He wished to inquire about the 2010 accusation of sexual misconduct that J.K. reported to law enforcement but later indicated did not occur. The State argued that J.K. never recanted that the incident with the doctor occurred, but that J.K. "just changed that maybe her perception of the events was wrong." At that point, the court ruled that defense counsel could ask J.K. whether she recalled accusing an obstetrical physician of touching her inappropriately and whether J.K. later remembered the event differently.

However, when trial resumed the next morning, the court informed counsel that it had "change[d] its mind" regarding the order in limine. The court stated that it would not allow Ali to call or cross-examine J.K. for the purpose of having J.K. testify concerning the alleged accusation of sexual assault against the doctor. The court reasoned that

> given the very different circumstances of the two incidents, . . . the alleged false sexual abuse allegation made against the obstetrical physician is not probative or is only minimally probative of her general credibility and is likely to be outweighed by a substantial prejudice to the State, as well as a confusion of issues and an unnecessary expansion of testimony that may very well result in a

mini-trial regarding the nature of what happened following the accusation against the obstetrical physician.

Ali's counsel then made an offer of proof. The offer consisted of two parts.

First, as part of the offer, counsel reoffered exhibits 38 and 39—the DVD video and the deposition of J.K. We have already summarized their respective contents above.

Second, counsel represented that if called, J.K. would testify that she made an accusation to law enforcement that a doctor touched her inappropriately during the course of an examination in a sexual manner and that she was very upset by what occurred. J.K. would further testify that what she reported to law enforcement was inaccurate and that it is now her belief that the doctor did not touch her in an inappropriate sexual manner.

The court acknowledged the offer of proof. But it did not change its ruling.

### 4. Verdict and Posttrial Proceedings

A jury found Ali guilty, and the court entered "judgment" of guilty of sexual assault in the first degree. Ali moved for a new trial based on the court's evidentiary ruling. The court overruled the motion.

Ali did not appear for sentencing. A considerable delay followed.

Eventually, Ali was extradited to the United States from Australia. In 2021, the court imposed a sentence of 7 to 12 years' imprisonment.

Ali filed a timely appeal, which we moved to our docket.[1]

### III. ASSIGNMENT OF ERROR

Ali assigns that the court erred "in prohibiting [him] from eliciting evidence regarding J.K.'s prior false allegation of sexual assault against her prenatal doctor."

---

[1] See Neb. Rev. Stat. § 24-1106(3) (Cum. Supp. 2020).

## IV. STANDARD OF REVIEW

[1,2] Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.[2] A judicial abuse of discretion exists only when the reasons or rulings of a trial judge are clearly untenable, unfairly depriving a litigant of a substantial right and denying a just result in matters submitted for disposition.[3]

## V. ANALYSIS

This appeal focuses on the district court's evidentiary ruling. The ruling prohibited Ali from adducing evidence that 2 years prior to the encounter with him, J.K. had reported to law enforcement that she was inappropriately touched by a physician during a prenatal examination and later changed her characterization of the encounter to conclude it was a normal procedure.

Ali argues that under criteria set forth in *State v. Swindle*,[4] the court should have admitted evidence of J.K.'s prior allegation. The State disagrees, contending that Nebraska's rape shield statute controlled and that J.K.'s accusation was not false. Before discussing the *Swindle* decision, including its statutory and constitutional underpinnings, we review Nebraska's rape shield statute.

### 1. Rape Shield Statute

[3] To understand *Swindle*, one must understand § 27-412, Nebraska's rape shield statute. Under § 27-412, evidence offered to prove a victim's past sexual behavior or sexual predisposition is inadmissible unless an exception applies.[5]

---

[2] *State v. Abligo, ante* p. 74, 978 N.W.2d 42 (2022).

[3] *State v. Greer, ante* p. 351, 979 N.W.2d 101 (2022).

[4] *State v. Swindle*, 300 Neb. 734, 915 N.W.2d 795 (2018).

[5] *State v. Abligo, supra* note 2.

In a criminal case, § 27-412(2)(a) sets forth three exceptions to the inadmissibility of such evidence, provided the evidence would otherwise be admissible under the Nebraska Evidence Rules. One permits admission of evidence of specific instances of sexual behavior by the victim offered to prove that a person other than the accused was the source of semen, injury, or other physical evidence.[6] Another exception allows the admission of evidence of specific instances of sexual behavior of the victim with the accused to prove consent of the victim, if it is first established that such behavior is similar to the behavior involved in the case and tends to establish a pattern of behavior of the victim relevant to the issue of consent.[7] The last exception allows admission of evidence if its exclusion would violate the accused's constitutional rights.[8]

Nebraska's rape shield statute serves two purposes.[9] First, the statute protects rape victims from grueling cross-examination about their past sexual behavior or sexual predisposition that too often yields testimony of questionable relevance.[10] Second, the rape shield statute prevents the use of evidence of the complaining witness' past sexual conduct with third parties or sexual predisposition from which to infer consent or undermine the witness' credibility.[11]

## 2. State v. Swindle

We now turn to *Swindle*. After setting out a brief background surrounding the pertinent issue, we discuss the *Swindle* court's reasoning regarding the inapplicability of § 27-412, the statutory and constitutional underpinnings of its reasoning, and the *Swindle* court's prescribed procedure.

---

[6] § 27-412(2)(a)(i).

[7] See § 27-412(2)(a)(ii).

[8] See § 27-412(2)(a)(iii).

[9] *State v. Swindle, supra* note 4.

[10] *Id.*

[11] *Id.*

### (a) Background

In *Swindle*, the State charged the defendant with several offenses, including sexual assault of a child in the first degree. Prior to trial, the defendant filed a notice of intent to present § 27-412 evidence. He wanted to adduce evidence that the victim had on multiple prior occasions run away from home and, when caught, falsely claimed that she had been raped. The defendant argued that evidence of the victim's prior false claims of rape went to the victim's credibility.

### (b) Inapplicability of § 27-412

We started by considering the application of § 27-412 to the facts of the case. To refresh, § 27-412(1) bars "[e]vidence offered to prove that any victim engaged in other sexual behavior" and "[e]vidence offered to prove any victim's sexual predisposition." But the defendant in *Swindle* wished to adduce evidence of the victim's prior false claims of rape.

[4] As a matter of first impression, we determined that a false accusation of rape where no sexual activity is involved falls outside of Nebraska's rape shield statute. In other words, it did not fit within the categories of evidence that were "not admissible" under § 27-412(1). In making this determination, we agreed with other courts holding that "a false accusation of rape where no sexual activity is involved, is itself not 'sexual behavior' involving the victim."[12]

### (c) Statutory and Constitutional Underpinnings

As noted, our *Swindle* decision relied on cases from other jurisdictions. While our decision did not explicitly set forth underlying statutory and constitutional provisions with respect

---

[12] *Id.* at 752, 915 N.W.2d at 809 (citing *State v. Boggs*, 63 Ohio St. 3d 418, 588 N.E.2d 813 (1992); *Miller v. State*, 105 Nev. 497, 779 P.2d 87 (1989); and *Clinebell v. Commonwealth*, 235 Va. 319, 368 S.E.2d 263 (1988)).

to cross-examination about false allegations of sexual assault, the cases we relied upon did.[13]

### (i) Confrontation Clause

[5-8] The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees the right of an accused in a criminal prosecution to be confronted with the witnesses against him or her.[14] A primary interest secured by the Confrontation Clause is the right of cross-examination.[15] Cross-examination is the principal means by which the believability of a witness and the truth of his or her testimony are tested.[16] Subject to the trial court's broad discretion, a cross-examiner has traditionally been allowed to impeach or discredit the witness.[17]

[9,10] But the Confrontation Clause is not without limit. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve.'"[18] "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[19] Thus, "[i]n weighing whether evidence must be admitted under the Confrontation

---

[13] See, *State v. Daffin*, 387 Mont. 154, 392 P.3d 150 (2017); *State v. Boggs, supra* note 12; *Miller v. State, supra* note 12; *Clinebell v. Commonwealth, supra* note 12.

[14] See *Davis v. Alaska*, 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974).

[15] See *id.*

[16] See *id.*

[17] See *id.*

[18] *United States v. Scheffer*, 523 U.S. 303, 308, 118 S. Ct. 1261, 140 L. Ed. 2d 413 (1998).

[19] *Holmes v. South Carolina*, 547 U.S. 319, 326, 126 S. Ct. 1727, 164 L. Ed. 2d 503 (2006).

Clause, the trial court should balance the probative value of the evidence sought to be introduced against the risk its admission may entail."[20]

### (ii) Evidentiary Rule and Equivalent Statutes

Some of the cases cited in *Swindle* relied upon the evidentiary rule, or the state's equivalent statute, addressing evidence relating to a witness' credibility.[21] Our rule, codified at Neb. Rev. Stat. § 27-608 (Reissue 2016), provides in part:

> (2) Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of crime as provided in section 27-609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness be inquired into on cross-examination of the witness (a) concerning his character for truthfulness or untruthfulness, or (b) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

[11] In a sexual assault case, the complaining witness' credibility is critical.[22] Thus, prior fabricated accusations of sexual assault are highly probative of a complaining witness' credibility.[23] As a different court stated, "in the context of prosecutions of sexual offenses, evidentiary constraints must sometimes yield to a defendant's right of cross-examination."[24]

---

[20] *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000).

[21] See, *State v. Boggs, supra* note 12 (Ohio Evid. R. 608(B) (LexisNexis 2001)); *Miller v. State, supra* note 12 (Nev. Rev. Stat. § 50.085 (2021)); *Clinebell v. Commonwealth, supra* note 12 (recognizing that witness' character may be attacked by presenting testimony that witness' general reputation for truth and veracity is bad).

[22] *Miller v. State, supra* note 12.

[23] See *id.*

[24] *Clinebell v. Commonwealth, supra* note 12, 235 Va. at 325, 368 S.E.2d at 266.

### (d) Procedure

[12] In *Swindle*, we set forth a procedure to be followed before defense counsel may engage in cross-examination of the complaining witness concerning alleged false accusations of sexual assault. We stated:

> [B]efore defense counsel launches into cross-examination about false allegations of sexual assault, a defendant must establish, outside of the presence of the jury, by a greater weight of the evidence, that (1) the accusation or accusations were in fact made, (2) the accusation or accusations were in fact false, and (3) the evidence is more probative than prejudicial. If the defendant satisfies these three conditions, the trial court will authorize cross-examination of the complaining witness concerning the alleged false accusations. The defendant may thereafter present extrinsic evidence of the false accusations only if the complaining witness denies or fails to recall having made such accusations.[25]

Before discussing the potential application of *Swindle* to this case, we address a concern raised by the State.

### 3. Retroactivity of *Swindle*

The State questions whether *Swindle*—decided 5 years after the trial but 3 years prior to sentencing in the instant case—is applicable. The State contends that "to permit a defendant who has deliberately fled the jurisdiction to avoid sentencing the advantage of case law decided in the intervening years between conviction and sentencing is to create a 'run for the border' doctrine."[26]

[13] The State's concern is unfounded. Although the amount of time between trial and sentencing was certainly unusual, the applicability of *Swindle* to this case is really no different than if the *Swindle* decision had been released immediately after sentencing. In both situations, the conviction has not

---

[25] *State v. Swindle, supra* note 4, 300 Neb. at 752, 915 N.W.2d at 809-10.

[26] Brief for appellee at 18.

become final. A sentence is not a final judgment until the entry of a final mandate of an appellate court if an appeal is taken.[27]

[14] Generally, it is appropriate to apply an appellate court's interpretation of a statute to any case still on direct appeal. A judicial decision interpreting a statute may be applied retroactively unless the decision denies due process by being both unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue.[28] Thus, where a court interprets a statute in a surprising manner that has little in the way of legal support, the interpretation could not be applied retroactively.[29]

Our decision in *Swindle* distinguished evidence of prior "sexual behavior" as used in § 27-412 from false allegations of sexual assault. Our decision then provided guidance as to when a purportedly false prior allegation may be admissible. We did so based upon decisions from other courts. Thus, it cannot be said that we interpreted our statute in a surprising way that had little legal support. We noted that the issue was one of first impression in Nebraska, but that other jurisdictions had considered a similar issue. Therefore, our decision was not indefensible, nor was it entirely unexpected.

Although our *Swindle* decision and the guidance it provides were not available at the time of Ali's trial, we apply it here.

## 4. Application of *Swindle*

*Swindle* teaches when there is a prior allegation of sexual misconduct, the trial court must first determine whether any sexual behavior of the victim is involved. If it is, the rape shield statute prohibits such evidence. But if the prior allegation was false because no sexual behavior occurred, the rape shield statute would not prohibit cross-examination regarding the allegation.

---

[27] *State v. Urbano*, 256 Neb. 194, 589 N.W.2d 144 (1999).

[28] *State v. Davlin*, 263 Neb. 283, 639 N.W.2d 631 (2002).

[29] *State v. Redmond*, 262 Neb. 411, 631 N.W.2d 501 (2001).

The situation here is complicated by the nature of J.K.'s complaint. She complained that a doctor placed his hand on her leg and rubbed up and down in connection with her first prenatal examination. This does not seem to constitute "sexual behavior." Thus, like the situation in *Swindle*, the evidence sought to be introduced here is not excluded by § 27-412's prohibition against evidence of "other sexual behavior."

Ali urges that evidence of J.K.'s prior allegation should have been admissible under the criteria set forth in *Swindle*. We turn to the three conditions to be satisfied before cross-examination of the complaining witness about an alleged false accusation may occur.

First, a defendant must establish that the accusation or accusations were in fact made. There is no dispute that J.K. made an accusation—she reported the doctor's touching to law enforcement.

Second, the defendant must show that the accusation or accusations were in fact false. Here, J.K. gave law enforcement her account of what occurred with the doctor during the prenatal examination. Later, J.K.'s perception of the touching changed. But she did not recant that the touching occurred. The change in J.K.'s perception—that the touching may have actually been a normal part of the examination—did not transform a truthful account into a false one. Ali failed to show that J.K.'s prior allegation was in fact false.

Ali also fails to satisfy the third condition. He needed to establish that the evidence was more probative than prejudicial. Ali argues that it went to J.K.'s credibility, which was of paramount concern. But J.K.'s account of the doctor's touching and her perception of it is not probative of her character for truthfulness or untruthfulness. According to the offer of proof, which included her deposition testimony, she was confused by what had happened. But she did not change her account to say that the touching did not occur.

Moreover, J.K.'s prior allegation is considerably different from the allegation against Ali. The prior allegation concerned

a doctor's touching her leg with his hand during a prenatal examination, which, at the time, J.K. thought to be inappropriate. In contrast, the incident with Ali involved sexual contact—which, according to J.K.'s trial testimony, happened despite her resistance in telling him "no" numerous times and attempting to push him away—and culminated in penile penetration. The minimal probative value of evidence regarding J.K.'s allegation against the doctor is outweighed by its prejudicial effect. Ali failed to meet the three conditions set forth in *Swindle*. We conclude that exclusion of the evidence did not violate Ali's constitutional right to confront his accuser.

The district court likewise concluded that evidence of J.K.'s allegation against the doctor was inadmissible. It stated that "the alleged false sexual abuse allegation . . . is not probative or is only minimally probative of [J.K.'s] general credibility and is likely to be outweighed by a substantial prejudice to the State, as well as a confusion of issues and an unnecessary expansion of testimony." We cannot say that the court's ruling was clearly untenable.

## VI. CONCLUSION

Because the district court did not abuse its discretion in prohibiting Ali from questioning J.K. about her prior allegation against a doctor, we affirm its judgment.

Affirmed.