COURT OF APPEALS OF VIRGINIA

Present: Judges Causey, Lorish and White
Argued at Salem, Virginia

UNPUBLISHED

JAMES ABRIEL GUSHWA

MEMORANDUM OPINION* BY
v.        Record No. 1610-22-2                    JUDGE KIMBERLEY SLAYTON WHITE
                                                 APRIL 23, 2024

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF ORANGE COUNTY
David B. Franzen, Judge

S. Page Higginbotham III (Higginbotham & Reid, PLC, on briefs),
for appellant.

Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.

Following a bench trial, James Abriel Gushwa was convicted in the Circuit Court of Orange

County of one count of rape, in violation of Code § 18.2-61. On appeal, Gushwa asserts that the

trial court erred by (1) denying his motion for admission of rape shield evidence, (2) refusing to

grant his motion for a mistrial, and (3) finding the evidence sufficient to support his conviction for

rape. For the following reasons, we disagree with Gushwa's assertions and affirm the court below

on all issues.

BACKGROUND

On appeal, we review the evidence "in the 'light most favorable' to the Commonwealth, the

prevailing party in the trial court." *Hammer v. Commonwealth*, 74 Va. App. 225, 231 (2022)

(quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)). Doing so requires us to "discard the

evidence of the accused in conflict with that of the Commonwealth, and regard as true all the

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom." *Cady*, 300 Va. at 329 (quoting *Commonwealth v. Perkins*, 295 Va. 323, 324 (2018)).

Gushwa was a regular customer at a Sheetz store in Orange County where S.S.[1] worked. In August 2019, Gushwa told S.S. that he was recently involved in a motorcycle accident and was feeling suicidal. To show support for Gushwa, S.S. visited him at his apartment. She sat on the floor and played with Gushwa's two orange tabby kittens as she and Gushwa talked about life and the troubles he had had. Gushwa told her that he had been molested as a child and that he had killed his molester and buried him in a park. Gushwa also said he had cancer. Gushwa showed S.S. several bruises he sustained in the motorcycle accident, which included a bruised groin. Later he offered her Zantac and Oxycontin which she declined.

When Gushwa put his hand out to pick S.S. up from the floor, she said "no" and refused to stand up. After trying three times, Gushwa convinced S.S. to stand up and then pulled her to him to kiss her. As he put his tongue in her mouth, S.S. pulled away, but Gushwa pushed her toward his bedroom and continued to kiss her against her wishes.

When S.S. had a panic attack, Gushwa asked her if she wanted to lie down on his bed. S.S. laid on his bed curled into a ball. Gushwa reclined on the bed behind her, put his hands down her pants, and tried to touch her between her legs. S.S. pressed her legs together as hard as she could, but Gushwa pulled her legs apart and removed her pants. S.S. cried as Gushwa penetrated her vagina with his penis, and she nodded her head "yes" when he asked if she wanted him to stop. Gushwa stopped momentarily, but then continued and told her to "ride" him. S.S. tried to crawl away, but he grabbed her and pulled her back. S.S. then just stared at Gushwa's snake terrarium

---

[1] We refer to the complaining witness by her initials to maintain her privacy.

and "wait[ed] for him to be done." S.S. did not consent to intercourse and "just wanted to be left alone."

Gushwa stopped when S.S. received a phone call from her husband, who was concerned about her safety. S.S. did not tell her husband about what occurred because she said it would hurt him. As she stood up from the bed, Gushwa said that she "had made things happen that the doctor said would not be possible," namely, "to get aroused and have erections and have sex."

After the incident, S.S. returned to work at Sheetz and acted like everything was normal. Following her night shift, S.S. called her best friend, Amairany Quinonez, and reported that she thought she had been raped. When Quinonez suggested that S.S. report the matter to the police, S.S. responded that she "just wanted to go home and pretend that none of it happened." S.S. did not talk about the incident again for a long time. In the meantime, her personality changed from "bubbly [and] friendly" to angry and scared. Feeling isolated, she did not talk or smile, and she was no longer nice to the customers. It was only after someone began calling Sheetz on a regular basis in 2020 asking for S.S.'s work schedule that S.S. reported the incident to a co-worker, Michelle Sorensen, who later helped her contact the police.

On cross-examination, S.S. admitted that she had taken marijuana to Gushwa's residence on the day of the offense and that she and Gushwa "probably could have" smoked some. She also admitted that she took medication for anxiety and depression. She conceded that the marijuana and anxiety medication altered her mood. She also conceded that during the incident she did not say "no," but she explained that she had a "freeze" response. Her instinct was to "just let him do what he wanted." After the incident, Gushwa texted her, asking if she enjoyed herself, and she responded that she did not want to do it. She then deleted his phone number and blocked him on her phone. Later, she asked her husband to burn the clothes she was wearing at the time of the incident because they "made [her] remember" the assault.

- 3 -

Before trial, Gushwa filed a written motion seeking the admission of statements S.S. made to police that purportedly fell under the rape shield statute. The motion alleged that the evidence would be offered to support Gushwa's contention that S.S. had a motive to fabricate the charge. At a hearing on the motion, Gushwa proffered that S.S. told police "this was not the first time that she had been raped, but it was the first time that she was reporting a rape," and he argued that the rape shield statute did not protect that statement because it was "quite possible that she is taking out any sort of frustration, anger, any sort of animosity that she has to someone else on the defendant," giving her a motive to fabricate. Gushwa also proffered that S.S. explained to police that when she reported the prior rape allegation to her sister, her sister responded, "well, [S.S.], I know how you get when you get depressed, are you sure that you just didn't regret it afterwards." S.S. responded, "why the f--- would the police believe me if my own family can't." Gushwa concluded, "so, if you combine that statement, the fact that her sister and her family don't believe her with the fact that she's made prior allegations, I think that there's at least the reasonable probability of a falsity in that prior statement. I think I should be able to cross-examine her on those."

The trial court viewed the bodycam footage capturing S.S.'s statements to police and found that they were protected by the rape shield law and that they did not support an assertion she had a motive to fabricate.[2] The trial court denied the motion to admit S.S.'s statements at trial.

At trial the Commonwealth presented witnesses, in addition to S.S., in their case-in-chief. Quinonez testified that she received a call from S.S. during the early morning hours one day in August 2019. During their conversation, S.S. "broke down crying" and reported to Quinonez that she had been assaulted. S.S. said that a regular customer from Sheetz had forced himself on her and that she was scared and did not know what to do. Because S.S. was so upset, Quinonez remained

_____

[2] The bodycam footage was not included in the record on appeal.

- 4 -

on the phone with her for a long time "just talking to her and trying to get her to calm down." S.S. told Quinonez that during the assault, she kept telling her assailant to get off her and that she wanted to leave. Quinonez encouraged S.S. to contact the police, but S.S. did not want to cause any more trouble and was scared about what would happen to her if she did. Quinonez further testified that before the assault, S.S. was doing very well in life, but afterwards things "got pretty dark for a while." Quinonez explained that S.S. started "self-harming pretty badly" and ultimately "cut up her arms really bad, pretty deeply." S.S. then started "disassociating" and seemed "lost."

Michelle Sorensen worked with S.S. at Sheetz. Sorensen testified that initially S.S. "was always a happy-go-lucky person" and pleasant to be around, but then one day S.S. "just kind of flipped out on [Sorensen] in front of the customers and cursed at [her]." S.S. later confided in Sorensen that she had been raped. Sorensen explained that once when Gushwa entered the store sometime after the assault, S.S. "just lost it" and exclaimed "that's him." S.S. avoided Gushwa by going into the back of the store. Sorensen invited S.S. to her home one day in February 2020, because S.S. was "self-isolating," and it was from there that they contacted the police.

Detective Adrienne Powell, who responded to Sorensen's house and spoke with S.S, testified that S.S. was visibly shaken, upset, and angry as she reported that Gushwa sexually assaulted her "on an earlier date in time." Detective Powell testified that S.S. said she had not come forward earlier because she did not know "how it would look, her going to his house being that she was a married woman." She also testified that she had received text messages from Gushwa after the assault, but she had not kept them. Detective Powell also recalled that S.S. said her husband "burned something."

After the Commonwealth rested and before the defense presented its case, the trial court learned that Detective Powell had remained in the courtroom during argument on Gushwa's motion to strike, which was denied. After Gushwa reminded the trial court that it had excluded the

witnesses, the Commonwealth stated that it had no expectation of calling Detective Powell as a rebuttal witness. Gushwa moved to dismiss the charges and for a mistrial. Gushwa argued that,

> [T]he rule is in place for a reason. It ensures a fair trial. Ensures that the defendant's rights are not prejudiced by having one witness listen to the testimony of another witness and then can modify their testimony. I don't know what she would say. I don't know if I call her. But it certainly is my---my right to call her and the Court had--- as just kind of a threshold matter, the Court hadn't done away with the rule. It's a matter of whether the Court's rules matter. The Court said stay outside, don't talk to anyone, and yet, here we are.

The trial court took the motions under advisement.

Gushwa's wife, Jessica, testified that in August 2019 she and Gushwa were engaged. Jessica recalled that Gushwa was in a motorcycle accident in late July 2019 and was transported to the hospital with injuries. Gushwa sustained a laceration to his right elbow, road rash, and "multiple places of bruising" along his arms and near his groin area "around his penis, his legs, and his right ankle and foot." He also incurred bruises on both knees and, for two weeks, could only walk with a crutch. Jessica conceded that she and Gushwa engaged in sexual relations both before and after the motorcycle accident. She also acknowledged that Gushwa took two kittens to his residence in August 2019, but she maintained that he did so later in August, after the assault was alleged to have occurred.

Gushwa testified that he met S.S. at Sheetz, and he described the nature of their relationship as "flirtatious, passing conversational." On the day S.S. was at his apartment, he explained that S.S. earlier had texted him asking where he was and if he wanted company. When she arrived at his apartment, they smoked marijuana and then he went to his bedroom to smoke a cigarette. He denied that he had any kittens at his house on that occasion. When S.S. entered his bedroom, she asked him about his snakes and then sat down on his bed. Gushwa denied offering S.S. narcotics, taking her to his bedroom, removing her clothing, touching her intimate parts, or having sexual

- 6 -

intercourse with her. In fact, he said he was not even able to obtain an erection until the end of August.

Following the presentation of the evidence and closing arguments, the trial court denied Gushwa's motion for a mistrial and convicted him of rape as charged in the indictment. This appeal followed.

ANALYSIS

I. Motion for Admission of Prior Sexual Conduct

Gushwa first argues that the trial court erred by excluding two statements S.S. made to Detective Powell regarding a prior rape allegation and her sister's response to it. He asserts that the statements S.S. made to Detective Powell were admissible "for impeachment purposes" to show that S.S. "makes false statements concerning sexual behavior," and concludes that the "net effect of the denial" of his pretrial motion for admission of prior sexual conduct was that S.S.'s testimony "went unchallenged, as did her veracity." For the following reasons, we find that the trial court did not abuse its discretion in excluding the statements S.S. made to Detective Powell.

"Decisions regarding the admissibility of evidence 'lie within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion.'" *Blankenship v. Commonwealth*, 69 Va. App. 692, 697 (2019) (quoting *Michels v. Commonwealth*, 47 Va. App. 461, 465 (2006)). "This standard, if nothing else, means that the trial judge's 'ruling will not be reversed simply because an appellate court disagrees.'" *Turner v. Commonwealth*, 65 Va. App. 312, 327 (2015) (quoting *Thomas v. Commonwealth*, 44 Va. App. 741, 753, *adopted upon reh'g en banc*, 45 Va. App. 811 (2005)). "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "A trial court . . . 'by definition abuses its discretion when it makes an error of law.'" *Robinson v. Commonwealth*, 68 Va. App. 602, 606 (2018) (quoting *Dean v. Commonwealth*, 61 Va. App. 209,

213 (2012)). Thus, "evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" *Abney v. Commonwealth*, 51 Va. App. 337, 345 (2008) (quoting *Michels*, 47 Va. App. at 465).

Code § 18.2-67.7, commonly referred to as the rape shield statute, provides in pertinent part that "[i]n prosecutions under this article . . . general reputation or opinion evidence of the complaining witness's unchaste character or prior sexual conduct[3] shall not be admitted." Code § 18.2-67.7(A). However, "[n]othing contained in this section shall prohibit the accused from presenting evidence relevant to show that the complaining witness had a motive to fabricate the charge against the accused." Code § 18.2-67.7(B). "Evidence of past sexual conduct, to be admissible under the "motive to fabricate" provisions of Code § 18.2-67.7(B) . . . must show a pattern of behavior which directly relates to the conduct charged against the complaining witness in the case on trial." *Winfield v. Commonwealth*, 225 Va. 211, 220 (1983). Before such evidence may be admitted, the trial court must first determine "the admissibility of that evidence at an evidentiary hearing to be held before the evidence is introduced at . . . trial." Code § 18.2-67.7(C); *see also* Va. R. Evid. 2:412(c).

The relevant statements to this issue are that S.S. explained to police that when she reported the prior rape allegation to her sister, her sister responded, "well, [S.S.], I know how you get when you get depressed, are you sure that you just didn't regret it afterwards." S.S. responded, "why the f--- would the police believe me if my own family can't."

In this case, the trial court conducted an evidentiary hearing and ruled that the above statements S.S. made to police were protected by the rape shield statute and did not fall under the

---

[3] Prior sexual conduct "means any sexual conduct on the part of the complaining witness which took place before the conclusion of the trial, excluding the conduct involved in the offense alleged." Code § 18.2-67.10(5).

"motive to fabricate" exception to it. Code § 18.2-67.7(B). On appeal, Gushwa argues that the statements were not conduct for purposes of the rape shield statute and therefore that they were admissible for impeachment. We assume without deciding that the trial court erred in finding that S.S.'s statements referred to *conduct* for purposes of the rape shield statute. False statements about sexual abuse do not qualify as conduct under the rape shield statute.[4] *Clinebell v. Commonwealth*, 235 Va. 319, 322 (1988). Nevertheless, for the following reasons, we find that the trial court properly excluded the statements.[5]

It is well-settled that "a witness' character may not be impeached by showing specific acts of untruthfulness or bad conduct." *Id.* at 323-24. "In sex offense cases, however, the weight of authority recognizes more liberal rules concerning impeachment of complaining witnesses." *Id.* at 324. Accordingly, "evidence of prior false accusations is admissible to impeach the complaining witness' credibility or as substantive evidence tending to prove that the instant offense did not occur." *Id.* Indeed, "[c]ross-examination is an absolute right guaranteed to a defendant by the confrontation clause of the Sixth Amendment and is fundamental to the truth-finding process. It is '[o]ne of the most zealously guarded rights in the administration of justice.'" *Id.* at 325 (second alteration in original) (internal citations omitted) (quoting *Moore v. Commonwealth*, 202 Va. 667, 669 (1961)). "Consequently, in a sex crime case, the complaining witness may be cross-examined

---

[4] Because we find that S.S.'s statements were not protected by the rape shield statute, we need not address whether they were admissible under the "motive to fabricate" exception to the general rule. However, the motive to fabricate exception also would not apply because one accusation, not proven to be false, would not rise to the level of a "pattern of behavior" that directly correlates to the issue.

[5] "Under the right-result-different-reason principle, an appellate court 'do[es] not hesitate, in a proper case, where the correct conclusion has been reached but [a different] reason [is] given, to sustain the result [on an alternative] ground.'" *Laney v. Commonwealth*, 76 Va. App. 155, 162 n.3 (2022) (alterations in original) (quoting *Vandyke v. Commonwealth*, 71 Va. App. 723, 731 (2020)).

about prior *false* accusations, and if the witness denies making the statement, the defense may submit proof of such charges." *Id.* (emphasis added). "A complaining witness' prior accusations are admissible, however, only if a court makes a threshold determination that a reasonable probability of falsity exists." *Id.*

In *Clinebell*, upon which Gushwa relies, the Commonwealth filed a motion *in limine* seeking to prohibit the admission of four statements made by the complaining witness, namely:

> (1) that in 1983, she told a classmate that she was pregnant; (2) that in 1984, she told the classmate that both [Clinebell] and her uncle had raped her; (3) that in 1984, she told a cousin that a boy named Wesley, who lived in Stewartsville, had gotten her pregnant; and (4) that she had claimed that her paternal grandfather had sexually abused her.

235 Va. at 321-22. Clinebell objected to the motion *in limine* and argued that the evidence was not being offered to prove that the complaining witness engaged in prior sexual conduct, but only to prove that she falsely claimed to have engaged in such conduct. *Id.* at 322. The trial court granted the motion *in limine* and found that the evidence was inadmissible under Code § 18.2-67.7. *Id.*

On appeal, the Supreme Court of Virginia reversed, reasoning that "[i]n light of [the complaining witness'] obviously false claims of pregnancy, a reasonable probability exits that her claims of sexual misconduct against the grandfather and the uncle also were false." *Id.* at 325. These false claims of pregnancy were found to be "patently untrue" by the court and were made in 1983 and 1984, when she was only 10 and 11 years old. *Id.* The Supreme Court concluded, "[h]ad the jury been informed of her prior statements . . . it properly could have inferred that [Clinebell's] alleged sexual acts with [her] were also fabrications." *Id.*

Unlike *Clinebell*, Gushwa failed to present any evidence or proffer any information proving that S.S.'s assertion that she was raped before was false. Rather, as the trial court found, S.S.'s statement stood "on a far different footing from *Clinebell*," as it contained only a general allegation of a prior unreported rape that was not shown to be false—or even that a reasonable probability of

- 10 -

falsehood existed. The statement was therefore irrelevant and inadmissible, as it had no probative importance to the question of whether Gushwa raped S.S. in August 2019. "An appellate court must dispose of the case upon the record and cannot base its decision upon appellant's petition or brief, or statements of counsel in open court. We may act only upon facts contained in the record." *Smith v. Commonwealth*, 16 Va. App. 630, 635 (1993). The only fact contained within the record is the blanket statement made by S.S. that she was raped on a prior occasion but did not report it. Nothing in the record demonstrates that the statement is false. Thus, we cannot conclude that the prior rape allegation was "substantive evidence tending to prove that the instant offense did not occur." *Clinebell*, 235 Va. at 324. For that reason, the trial court did not err in refusing to admit it.

For these reasons, we hold that the trial court's denial of Gushwa's motion for the admission of prior sexual conduct was within the "bell-shaped curve of reasonability governing our appellate review," *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016) (quoting *Sauder v. Ferguson*, 289 Va. 449, 459 (2015)), and we find the trial court was not plainly wrong in the refusal to admit S.S.'s statements, therefore the trial court did not abuse its discretion.

## II. Motion for Mistrial

Gushwa also asserts that the trial court erred in denying his motion for a mistrial after learning that Detective Powell was in the courtroom during the trial court's ruling on his first motion to strike. He contends that in denying his motion for a mistrial, the trial court effectively denied him the right to call for evidence in his favor. We find no abuse of discretion in the court's ruling to deny the motion for mistrial.

"We review a challenge to a circuit court's denial of a mistrial motion under established principles. The decision whether to grant a mistrial motion is a matter submitted to the circuit court's sound discretion." *Lewis v. Commonwealth*, 269 Va. 209, 213 (2005). "An abuse of

discretion occurs only when 'reasonable jurists' could not disagree as to the proper decision."

*Thomas v. Commonwealth*, 62 Va. App. 104, 111 (2013).

> This principle necessarily implies that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable. This bell-shaped curve of reasonability governing our appellate review rests on the venerable belief that the judge closest to the contest is the judge best able to discern where the equities lie.

*Id.* at 111-12 (quoting *Hamad v. Hamad*, 61 Va. App. 593, 607 (2013)). "In a criminal case, when defense counsel makes a motion for a mistrial based on an allegedly prejudicial [event], the circuit court must make a factual determination whether a defendant's right to a fair trial has been prejudiced, thereby requiring a new trial." *Lewis*, 269 Va. at 214. "[W]e will not reverse the denial of a motion for a mistrial unless a manifest probability exists that the trial court's ruling was prejudicial." *Wright v. Commonwealth*, 52 Va. App. 690, 707 (2008) (quoting *Perez v. Commonwealth*, 40 Va. App. 648, 654 (2003)).

After the Commonwealth rested and before the defense presented its case, the trial court learned that Detective Powell had remained in the courtroom during argument on Gushwa's motion to strike. After Gushwa reminded the trial court that it had excluded the witnesses, the Commonwealth stated that it had no expectation of calling Detective Powell as a rebuttal witness. Gushwa argues that after realizing Detective Powell remained in the courtroom during the motion to strike, he was left with "scant choices" on whether to call her to testify during his case-in-chief. Gushwa argues that "if he had any choice at all . . . it was a Hobson's choice." That is, if he called her to testify, he risked the possibility of tainted testimony.

The trial court did not abuse its discretion by denying the motion for mistrial because there is no showing of prejudice and no proffer of what the testimony would have included. As stated in *Wright v. Commonwealth*, we do not reverse denial of mistrials unless the trial court's ruling was

prejudicial. 52 Va. App. at 707. Here, Gushwa has claimed there was prejudice against him, but has failed to provide any showing of how Detective Powell remaining in the courtroom actually caused prejudice. Gushwa was afforded the opportunity for a thorough cross-examination of Detective Powell during the Commonwealth's case-in-chief. He also did not affirmatively state that he intended to call her to testify in his defense, nor did he proffer any expected testimony for our review. Rather, Gushwa took issue with the fact that Detective Powell did not comply with the trial court's order regarding the exclusion of the witnesses. Thus, because the record does not contain the testimony that he intended to elicit from Detective Powell to support his case or assist in his defense, we cannot ascertain whether the trial court's ruling resulted in actual prejudice to him, or that it otherwise effected the verdict.

## III. Sufficiency of the Evidence

Finally, Gushwa argues that the trial court erred in finding the evidence sufficient to support his conviction. Bound by our standard of review, we find no error in the judgment.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion

might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)).

"If any person has sexual intercourse with a complaining witness, whether or not his or her spouse . . . (i) against the complaining witness's will, by force, threat or intimidation . . . he or she shall be guilty of rape." Code § 18.2-61(A). It is well established that "a conviction for rape and other sexual offenses may be sustained solely upon the uncorroborated testimony of the victim." *Poole v. Commonwealth*, 73 Va. App. 357, 368 (2021) (quoting *Wilson v. Commonwealth*, 46 Va. App. 73, 87 (2005)). "As we have noted, '[b]ecause sexual offenses are typically clandestine in nature, seldom involving witnesses to the offense except the perpetrator and the victim, a requirement of corroboration would result in most sex offenses going unpunished.'" *Id.* at 368-69 (alteration in original) (quoting *Wilson*, 46 Va. App. at 88).

Moreover, "[s]o long as a witness deposes as to facts which, if true, are sufficient to maintain [the] verdict, then the fact that the witness' credit is impeached by contradictory statements affects only the witness' credibility; contradictory statements by a witness go not to competency but to the weight and sufficiency of the testimony." *Swanson v. Commonwealth*, 8 Va. App. 376, 379 (1989). Therefore, "[i]f the trier of the facts sees fit to base the verdict upon that testimony there can be no relief in the appellate court." *Id.* "This Court must accept 'the trial court's determination of the credibility of witness testimony unless, as a matter of law, the testimony is inherently incredible.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). Of course, to be incredible, testimony must be either "'so manifestly false that reasonable men ought not to believe it,' or 'shown to be false by objects or things as to the existence and meaning of which reasonable men should not differ.'" *Hammer*, 74 Va. App. at 239-40 (quoting *Gerald v. Commonwealth*, 295 Va. 469, 487 (2018)). "In other words, this Court cannot say a witness' testimony is inherently incredible unless it is 'so contrary to human

- 14 -

experience as to render it unworthy of belief.'" *Lambert*, 70 Va. App. at 759 (quoting *Johnson v. Commonwealth*, 58 Va. App. 303, 315 (2011)).

Contrary to Gushwa's assertion, there is nothing inherently incredible about S.S.'s version of events. The trial court listened to and considered both Gushwa's and S.S.'s version of the events. After considering the evidence, the trial court found that S.S. was a credible witness. Under the statutes and caselaw of the Commonwealth, a rape conviction can be sustained by the uncorroborated testimony of the victim. The trial court did not abuse its discretion by finding S.S. to be a credible witness.

S.S. explained that she went to Gushwa's apartment to offer support because he felt suicidal. While there, S.S. played with Gushwa's kittens and spoke with him about the things that were troubling him. S.S. then clearly attempted to rebuke Gushwa's advances by refusing to stand up, but he kept pressing her until she complied and pushed her toward his bedroom, all the while kissing her against her will. Despite her body language, which clearly indicated her desire to be "left alone," Gushwa encouraged her to lay down on his bed, forcefully pulled her legs apart, removed her pants, and penetrated her vagina with his penis. When S.S., who was crying, indicated with a nod that she wanted him to stop, he nevertheless continued, and when she attempted to crawl away, he pulled her back. S.S. was in a state of panic and scared about what he might do to her, especially given Gushwa's assertion that he killed his molester and buried the body in a park. S.S. testified that she did not consent to having sex with Gushwa.

Because no corroboration was required to prove the offense, S.S.'s testimony, standing alone, sufficiently established the elements of rape. The fact that S.S. did not have any physical injuries does not alter our conclusion. It is well-settled that "'no positive resistance' by the victim need be demonstrated if it appears that the crime was affected without her consent." *Wactor v. Commonwealth*, 38 Va. App. 375, 382 (2002) (quoting *Jones v. Commonwealth*, 219 Va. 983, 986

- 15 -

(1979)). In this case, the record is clear that S.S. did not freely consent to sexual intercourse with Gushwa.

Although no corroboration at all was required to support Gushwa's conviction, the Commonwealth presented evidence that clearly substantiated S.S.'s accusation. Quinonez testified that S.S. called her in August 2019, very early in the morning, and was very upset. S.S. was crying and her voice sounded odd as she reported that a regular customer from Sheetz had forced himself on her, that she was scared, and that she did not know what to do about it. S.S. made that call right after her shift ended on the night of the offense. "A complaint made by a victim of sexual assault 'has long been considered an expected and natural expression of the victim's feelings in response to the offense.'" *Wilson*, 46 Va. App. at 83 (quoting *Lindsey v. Commonwealth*, 22 Va. App. 11, 14 (1996)). "Such a complaint 'is a relevant circumstance in determining the complainant's credibility, on the theory that the failure to bring a complaint raises suspicion and doubt about the trust of the report.'" *Id.* (quoting *Lindsey*, 22 Va. App. at 14). Quinonez remained on the phone with S.S. trying to calm her and encouraged her to contact the police. Additionally, Quinonez testified that after the assault, S.S., who had been doing very well in life, became disassociated, seemed lost, and began cutting herself in acts of self-harm. S.S. also blocked Gushwa's phone number, deleted his texts, and burned the clothes she was wearing during the rape to dispel the memory of its occurrence.

Sorensen also testified that S.S., initially a "happy-go-lucky" person and pleasant to be around, became hostile and angry and that on one occasion when Gushwa entered the store, S.S. yelled, "that's him," and went to the back of the store to avoid contact. S.S. tried to keep the incident to herself until Sorensen, noting that S.S. had become increasingly isolated, encouraged her to report the rape and assisted her in contacting the police. As the trial court noted, the testimony of Sorensen and Quinonez established the fact that before the assault, S.S. had a "positive and

forward-looking demeanor" and following the incident, she had a "negative, self-harming demeanor." Such a dramatic change in her personality corroborated S.S.'s testimony and explained why that change occurred.

Finally, regarding Gushwa's complaint that the testimony of various witnesses contained minor inconsistencies, we note that "[p]otential inconsistencies in testimony are resolved by the fact finder." *Towler v. Commonwealth*, 59 Va. App. 284, 292 (2011). "Testimony may be contradictory or contain inconsistencies without rising to the level of being inherently incredible as a matter of law." *Kelley v. Commonwealth*, 69 Va. App. 617, 626 (2019). Here, the trial court had the opportunity to observe the witnesses during their testimony and was aware of the various minor inconsistencies in the way each witness remembered the facts alleged and the timeline in which they occurred. The trial court resolved those inconsistencies and differences in favor of the Commonwealth, and we do not disturb its findings. Indeed, as the trial court found, "there are very few cases in which there are not some inconsistencies expressed through the testimony of the complaining witness or any witness." We leave it to the trial court to resolve those matters. Moreover, the trial court was not required to accept Gushwa's denials or his version of events. "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998).

In sum, S.S.'s testimony, the truth of which was accepted by the trial court, established that Gushwa had sexual intercourse with her against her will by force, threat, or intimidation. We do not question the veracity of S.S.'s testimony, as it was the fact finder's "sole responsibility to determine the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from proven facts." *Blankenship v. Commonwealth*, 71 Va. App. 608, 619 (2020) (quoting *Ragland v. Commonwealth*, 67 Va. App. 519, 529-30 (2017)). Because S.S.'s testimony was not inherently

incredible or "unworthy of belief" as a matter of law, we find that a reasonable fact finder could conclude beyond a reasonable doubt that Gushwa raped her. Consequently, we do not disturb the verdict.

CONCLUSION

For the foregoing reasons, we find that the trial court did not abuse its discretion in refusing to admit S.S.'s statements concerning an alleged prior rape and her sister's supposed disbelief about it, that the trial court did not abuse its discretion in refusing to grant Gushwa's motion for a mistrial, and that the trial court did not err in finding the evidence sufficient to support the conviction. The judgment of the trial court will be affirmed.

*Affirmed.*